# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

EDWIN TAFOYA,

      Plaintiff,

v.                                                                         No. CIV 98-0479 BB/LGS

LUIS REYES, Individually, LARRY
CISNEROS, Individually, and KIT CARSON
ELECTRIC COOPERATIVE, INC., a New
Mexico corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on various motions for summary judgment and dismissal filed by Defendants (Docs. 45, 48, 52), as well as Defendants' objections to an order entered by the Magistrate assigned to this case (Doc. 43). Having considered the submissions of the parties and the applicable law, the Court will GRANT the motion to dismiss Plaintiff's prima facie tort claim; GRANT in part and DENY in part the motion for summary judgment on all claims; GRANT the motion for summary judgment requesting dismissal of the case as to the individual Defendants; and AFFIRM the order entered by the Magistrate.

**Facts and Procedural History**

This case arises out of employment-related disputes between Plaintiff, a former employee of Defendant Cooperative ("Defendant"), and Defendants. Plaintiff was employed by Defendant as a journeyman lineman. He suffered an on-the-job knee injury and was off work for a year. When he returned to work, he was medically restricted from climbing poles, and was assigned to a position on

an auger truck that did not require such climbing. His assignment to that position was terminated approximately a year later, after his supervisor suffered a stress-related illness, allegedly from having to deal with Plaintiff. Subsequently, Plaintiff was assigned to a tree-trimming crew, doing work that allegedly exacerbated his knee injury. He worked in that position for over a year, until he informed Defendant Reyes he could not continue to perform his duties. During this time, he repeatedly requested reassignment to the auger truck, stating he could not do his job without further injuring his knee. At the time Plaintiff told Reyes he could not continue as a tree trimmer and provided a doctor's note to that effect, Plaintiff was allegedly sent home and informed there was no position available for him with Defendant, at least until he provided a doctor's recommendation establishing what jobs he was capable of performing. This was shortly after Plaintiff had settled the workers' compensation claims he had filed as a result of his knee injury.

Shortly after Plaintiff was sent home, he was denied the opportunity to apply for a meter reader/collector position. He grieved that denial through the process required by the collective bargaining agreement ("CBA") that governed relations between Defendant and the union, of which Plaintiff was a member. Plaintiff's grievance was successful and he returned to work as a meter reader/collector. Almost immediately, he received a memo concerning deficient performance. Over the next ten months, he was allegedly suspended four times and successfully grieved each suspension. During this time he filed an EEOC claim alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § § 12101-12213. Finally, he requested and was granted a six-month leave of absence due to the stress resulting from his job. As soon as he returned to work, however, he began to receive memos concerning tardiness, failing to remain at his work station, and

2

other instances of allegedly deficient performance. Only two or three months after returning to work, Plaintiff resigned from his position with Defendant.

Shortly after his resignation, Plaintiff filed this lawsuit in state court. He alleged violation of his rights under the ADA, retaliation for the filing of his EEOC complaint, and several state-law claims, including intentional infliction of emotional distress ("IIED"), prima facie tort, and retaliation for the exercise of his rights under the workers' compensation laws of New Mexico. Plaintiff also filed another claim with the EEOC, concerning the ADA retaliation issue. Due to the presence of the federal ADA claims, Defendants removed the case to this Court. As noted above, Defendants have filed several motions, seeking relief that overlaps to a certain extent. Defendants seek dismissal of the prima facie tort claim; dismissal of Reyes and Cisneros as individual Defendants; and summary judgment as to all of Plaintiff's claims, which if granted would render the foregoing two motions moot. In addition, Defendants seek to add Plaintiff's former union as a party to the case, reasoning the union is an indispensable, or at least necessary, party. The Magistrate declined to bring the union into the case, and Defendants seek reversal of that decision. Again, if summary judgment were granted on all claims brought by Plaintiff, this issue would be rendered moot.

**Standard of Review**

As discussed below, the major portion of this opinion is directed at the summary judgment motions filed by Defendants. For that reason, the Court will note the standard of review applicable to such motions. "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.

1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court will consider Defendants' motions for summary judgment in light of these standards.

**Discussion**

**A. State-Law Claims–Preemption**

Defendants argue that all of Plaintiff's state-law tort claims are pre-empted by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a). According to Defendants, this result follows from the fact that Plaintiff is a member of a union and is covered by the terms of the CBA referred to above. Defendants maintain that under federal law, Plaintiff's remedies for his work-related claims were limited to those provided by the CBA, and Plaintiff was required to submit his disputes only through the grievance process established by the CBA. Plaintiff, on the other hand, contends he may bring his state-law tort actions despite the fact that he may have had the right to submit the underlying disputes to the grievance process.

Defendants are correct in arguing that at least some state-law claims arising out of employment situations are barred if a CBA is involved and applicable. *See Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1020 (10th Cir. 1990) (IIED claim based on harassment by supervisor

4

preempted). Plaintiff is also correct, however, in arguing that not all state-law claims are so barred. *See Albertson's, Inc. v. Carrigan*, 982 F.2d 1478, 1482 (10th Cir. 1993) (tort claim arising out of alleged conspiracy by employer to have employee arrested held not preempted). The difficulty arises in attempting to decide when a claim is preempted and when it is not.

In the Tenth Circuit there are a few clear guidelines to follow in addressing this question. First, claims based on a state or federal statute such as the ADA or a state anti-discrimination law are not preempted by the existence of a CBA. *See Milton v. Scrivner*, 53 F.3d 1118, 1121 (10th Cir. 1995). Second, a retaliation claim based on the exercise of a statutory right, such as the right to obtain workers' compensation, will not be preempted. *Johnson*, 921 F.2d at 1021. Pure tort claims, however, such as the IIED and prima facie tort claims raised by Plaintiff in this case, will be subject to preemption under certain circumstances.

The standards applied by the Tenth Circuit in determining whether a tort claim is preempted include the following: (1) whether application of the state-law claim requires reference to or an interpretation of the CBA; or (2) whether the state-law claims create a method independent of the CBA for measuring when an employer's work-related conduct is actionable. *Albertson's*, 982 F.2d at 1482; *Mock v. T. G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir. 1992) (holding that seven tort claims raised by plaintiff were all preempted). It is illustrative to compare the facts and results of *Albertson's* and *Mock*. In *Albertson's*, the employer allegedly fabricated a theft of groceries by an employee, and had the employee arrested as a result. The Tenth Circuit held that a tort claim based on those allegations was not preempted. In *Mock*, the employer conducted an internal investigation of suspected employee theft and substance abuse, and allegedly engaged in abusive practices while

5

doing so. The Tenth Circuit held that claims arising out of this internal investigation were preempted.

At first glance, it appears difficult to reconcile *Mock* with *Albertson's*, since both involve allegedly wrongful accusations of wrongdoing made by the employer against employees. Applying the tests stated in these cases, however, explains the results reached by each court. The basic question to be asked is whether, in order to decide the state-law claim, the court would have to look to the terms of the CBA and determine what types of actions the employer can take under that agreement. For example, in tort claims a basic issue is that of duty – what duty did the defendant owe to the plaintiff, and was that duty breached. Where a CBA is in effect, the CBA establishes the contours of the employer's duty toward the employees. The CBA governs matters of discipline, work conditions, and work assignments, and sets out the employer's duty with respect to each of those matters. To determine whether an employee is being treated unfairly, a court is required to refer to the CBA and decide whether the employer's conduct is permitted under that contract. This explains the different results in *Albertson's* and *Mock*. In the former case, the employer went beyond the bounds of the work relationship and not only fired the plaintiff, but had the plaintiff arrested. It was not necessary to refer to the CBA to determine the employer's duty not to falsely report a crime in order to have the plaintiff arrested. Furthermore, the consequences of the employer's actions were not limited to the employment relationship. In *Mock*, on the other hand, the investigation was entirely internal and the only consequences were employment-related disciplinary actions such as forced resignations. The question of the employer's duty, therefore, was entirely answered by the requirements of the CBA. In sum, if a plaintiff's claims arise out of solely employment-related concerns and consequences such as work assignments, disciplinary actions, and work conditions, the

tort claims will be preempted. On the other hand, if the claims involve alleged violations of duties independent of the CBA, they will not be preempted.

Turning to the circumstances of this case, it is apparent that Plaintiff's retaliation claim, based on his assertion of rights under the workers' compensation statute, is not preempted. *Johnson.* His IIED and prima facie tort claims, however, are based solely on Defendant's actions regarding work assignments, work conditions, and work-related discipline. For example, Plaintiff claims that Defendant assigned him to work at jobs that worsened his knee injury; removed him from a position that did not hurt his knee; unfairly and wrongly disciplined him several times; and imposed unreasonably restrictive work conditions in a discriminatory manner. All of these allegations concern matters covered by the CBA. The CBA gives Defendant broad powers with respect to disciplining, transferring, or hiring employees, and allows Defendant to establish rules governing the work place, as long as those rules are not in violation of the CBA. In order to decide whether Defendant has acted unfairly and outrageously, this Court would be required to apply the CBA and determine the parties' respective rights and duties under that agreement. Therefore, the Court will hold that Plaintiff's IIED and prima facie tort claims are preempted by Section 301 of the LMRA.[1]

**B. Workers' Compensation Retaliation Claim**

Since this claim has not been preempted, it is necessary to determine whether Plaintiff has raised a genuine issue of material fact sufficient to survive the motion for summary judgment. The facts viewed in the light most favorable to Plaintiff's claim include the following: (a) Defendant Reyes did not believe Plaintiff was disabled, thought he was exaggerating his injury, belittled the injury, told

---

[1] Due to this holding, the Court need not decide whether Defendant's contention that Plaintiff failed to adequately state a claim for prima facie tort is correct.

7

Plaintiff he should be healed by now, and assigned Plaintiff to duties that hurt the knee; (b) in June 1996, Plaintiff settled his workers' compensation claim; (c) shortly thereafter, Plaintiff was sent home when he gave Defendant Reyes a doctor's note indicating he could not continue to perform the duties of the position he had been assigned; (d) in July 1996, Plaintiff met with Defendant Reyes and other employees of Defendant, and at the meeting the subject of Plaintiff's settlement of his workers' compensation claims was brought up; (e) in August, Plaintiff was denied the opportunity to apply for a meter reader/collector position, a position he was physically able to perform; (f) after Plaintiff filed a grievance, he was awarded that position; (g) one week after he started his new job, he received a memo criticizing his performance; (h) over the next nine months, Plaintiff was wrongly suspended four times, and forced to successfully grieve each suspension, and was also subjected to restrictive work conditions; (i) Plaintiff took a six-month leave of absence from July 1996-January 1997, because he could not handle the stress caused by his work situation; (j) immediately after Plaintiff returned to work, he began receiving memos criticizing his lack of compliance with work rules and threatening discipline for such infractions as leaving his work station to retrieve eyeglasses he had left in his vehicle; (k) during this period, Plaintiff continued to be subject to restrictive and picayune work conditions not imposed on other employees, such as a requirement that he not leave the office (presumably even to use the bathroom) without permission of a supervisor, except during his morning and afternoon breaks and at lunch; and (l) after less than three months of this, Plaintiff submitted his resignation because he could not handle the work-related stress caused by the constant harassment of his supervisors.

The Court finds that the above facts, if proved, could state a claim for retaliation under New Mexico law. Under NMSA 52-1-28.2, it is unlawful for an employer to discharge, threaten to

discharge, or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits. Defendant does not contest that a civil cause of action exists in New Mexico for workers' compensation retaliation. In such a case, the employer's motivation for taking action is of paramount concern. The question of motivation is a pure question of fact that is most often proved by circumstantial, rather than direct, evidence. As outlined above, in this case there is evidence that Defendant was hostile to and disbelieving of Plaintiff's claims that he was disabled and unable to perform certain duties, even before he settled his workers' compensation claims. Shortly after that settlement, a pattern of adverse employment actions began, including wrongful suspensions that Plaintiff was forced to grieve to overturn. This pattern resumed immediately after Plaintiff returned to work following his leave of absence. Given this evidence, a reasonable factfinder could determine that Defendant resented Plaintiff's assertion of his rights under the workers' compensation statute and took action based on that resentment. A reasonable factfinder could also determine that the actions taken by Defendant affected the terms or conditions of Plaintiff's employment. Therefore, Plaintiff has raised genuine issues of material fact regarding this cause of action.[2]

### C. Federal Claims–ADA Discrimination and ADA Retaliation

**1. ADA Discrimination:** In order to prevail on an ADA discrimination claim, a plaintiff must prove that he or she is actually disabled, had a record of a disabling impairment, or was regarded

---

[2]Since the retaliation claim survives the summary judgment motion as at least an alteration of the terms and conditions of employment, it is not necessary to decide at this time whether the actions of Defendant might have risen to the level of constructive discharge. The Court does note, however, that the standards for making out such a claim are quite high. *See*, *e.g., Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992) (constructive discharge claim requires showing that working conditions were so intolerable that reasonable person would have been compelled to resign).

9

as disabled by the employer. *Bolton v. Scrivner*, 36 F.3d 939, 942 (10th Cir. 1994). A "disability" under the ADA means a physical or mental impairment that substantially limits one or more of the major life activities of the person. *Id.* The Tenth Circuit has defined major life activities to include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.*

There is no question in this case that Plaintiff has a physical impairment. He settled his workers' compensation claim on the basis of a 23% impairment of his right knee, attested to by at least two doctors. The question as to the "actual disability" issue is whether Plaintiff's impairment <u>substantially</u> limits any of Plaintiff's major life activities. *See Milatz v. Frito-Lay, Inc.*, 1997 WL 12933 (10th Cir.) (existence of permanent physical impairment, standing alone, is not sufficient to establish disability for ADA purposes; impairment must substantially limit major life activity); *Sutton v. New Mexico Dep't of Children Youth and Families*, 922 F.Supp. 516 (D.N.M. 1996) (degenerative arthritis condition did not limit major life activity). Plaintiff points out that he is restricted from lifting more than seventy (70) pounds, and cannot climb poles to perform the tasks required of a lineman. He also maintains there is a question of fact whether he can perform the functions of a tree trimmer. On this basis, he argues that he is substantially limited in the major life activities of performing manual tasks and working.

The Court notes, however, the following undisputed evidence. Plaintiff is physically able to perform the functions of his prior position on the auger truck, as well as the position of meter reader/collector. Since he resigned from his employment with Defendant, Plaintiff has been self-employed, operating a Bobcat that he purchased and striping parking lots. Plaintiff has also been paid to act as a hunting guide. During a meeting in July 1996, Plaintiff stated that he could not walk five

10

miles, but he could do normal walking. Plaintiff engages in recreational activities such as hunting, fishing, and horseback riding, although he has to be careful of his knee.

Given all the above evidence, the Court finds there is no genuine issue of material fact as to whether Plaintiff is disabled for ADA purposes. At most, his proof shows he was not able to perform two job assignments for one employer. He produced no evidence of inability to perform any other jobs available in the job market. *See Bolton*, 36 F.3d at 943 (inability to perform jobs available in local geographical area is important factor in determining whether there is a substantial limitation on the employee's ability to work). The only evidence available to this Court shows that Plaintiff can perform more jobs than he cannot perform, including at least two jobs with the same employer. Plaintiff's inability to perform two jobs with one employer, when he is able to perform two other jobs for that same employer and other types of work as well, is not enough to raise an issue as to whether he is substantially limited in his ability to work. *Bolton*; *Milatz*. Furthermore, the fact that Plaintiff engages in recreational activities such as hunting, fishing, and horseback riding cuts against his claim of disability. *See Szalay v. Yellow Freight System, Inc.*, 1997 WL 650915 (6th Cir.) (plaintiff was unable to perform only a narrow range of jobs, and was able to use his impaired knee for yard work, fishing, driving vehicles, and other recreational activities; plaintiff not disabled for ADA purposes even though impairment prevented him from climbing or excessive bending of knee). Finally, the mere fact that Plaintiff is restricted from lifting more than seventy pounds and from certain other activities is enough only to establish an impairment, not to raise a question as to whether the impairment is disabling. *See Szalay* (citing cases holding that various lifting limitations do not significantly restrict major life activites).

The remaining question is whether Plaintiff has raised a genuine issue of fact as to whether Defendant regarded him as having a disability as defined under the ADA. *Milatz*.[3] In support of this assertion, Plaintiff points to the fact that Defendant kept him off work until he obtained a doctor's permission to work as a meter reader/collector. However, the fact that Defendant may have viewed Plaintiff as impaired, and unable to perform the duties of a lineman or tree trimmer, does not mean Defendant viewed him as disabled under the ADA. *Id.* Under the latter, Defendant must have viewed Plaintiff as substantially impaired in major life activities. *Id.* The only evidence in this case is to the contrary. As discussed above, Defendant Reyes never considered Plaintiff disabled, but thought he was a malingerer exaggerating his injuries, told Plaintiff he should be healed by now, belittled his claim of impairment, assigned him to tree-trimming duties, and kept him on those duties despite Plaintiff's complaints. Furthermore, Defendant had video surveillance performed of Plaintiff because of the belief of Defendant's management that Plaintiff was exaggerating his physical problems. Given this evidence of management's strong belief that Plaintiff was in fact <u>not</u> disabled, there is no genuine issue of fact as to whether Defendant regarded Plaintiff as disabled. The fact that Defendant Reyes took Plaintiff off work after Plaintiff brought in the doctor's note concerning tree-trimming duties is evidence of nothing more than acquiescence in Plaintiff's and the doctor's wishes. At most, it constitutes evidence that Plaintiff was prevented from performing a narrow range of jobs, not that he was substantially impaired with respect to a major life activity. *Milatz.*

---

[3]The Court notes Defendant's argument that Plaintiff has never, before his summary-judgment brief, raised a "regarded as disabled" claim. *See Adams v. Strombecker Corp.*, 1998 WL 381028 (10th Cir.) (where "regarded as" claim was not raised until pre-trial conference, trial court correctly excluded it as untimely raised). Since Plaintiff's claim is easily addressed on the merits, it is unnecessary to decide whether it was timely raised. If the Court were to address that question, the Court would be inclined to agree with Defendant and to refuse to address the merits of the issue.

Since Plaintiff failed to raise a genuine issue of fact as to whether he is actually disabled, has a record of a disabling impairment, or was regarded as disabled by Defendant, summary judgment will be granted on the ADA discrimination/failure to accommodate claim.

**2. ADA Retaliation:** The first question that must be addressed is whether this Court can even consider this claim. Defendant argues that the Court may not do so, because an EEOC complaint concerning the alleged retaliation is still pending. The facts regarding that question are simple. Plaintiff filed one EEOC complaint, alleging ADA discrimination, in April 1997. Subsequently, after Plaintiff resigned, he filed another EEOC complaint alleging retaliation for the filing of his first complaint. Shortly thereafter, he filed the instant lawsuit alleging, among other things, retaliation for the first EEOC filing. Both parties correctly agree that if Plaintiff had not filed his second EEOC complaint, he would be allowed to include his retaliation claim in this lawsuit as a subsequent act closely related to his original ADA claim. Defendant's position, therefore, is that by filing the second EEOC charge, Plaintiff automatically separated his retaliation claim from the underlying discrimination claim, and must wait for a right-to-sue letter from the EEOC before proceeding on the retaliation claim.

Defendant's position finds some support in *Mosley v. Pena*, 100 F.3d 1515, 1519 (10th Cir. 1996). In *Mosley*, the Tenth Circuit held that a plaintiff who treated her retaliation claim as completely separate from the underlying discrimination claim, and did not include the retaliation allegations in her federal-court complaint, was required to exhaust her administrative remedies as to the retaliation claim. *Mosley* can be read as holding that the filing of a second EEOC charge automatically forces an ADA plaintiff to wait for the EEOC to act before proceeding any further with a retaliation claim. The Court believes, however, that *Mosley* did not intend to establish such a

bright-line rule. Instead, the Court believes the *Mosley* panel focused on the plaintiff's intent to treat the retaliation claim as separate from the underlying claim. This interpretation of *Mosley* is supported by another Tenth Circuit case, *Smith v. Denver Public School Bd.*, 1994 WL 651978 (10th Cir.). In *Smith*, the plaintiff filed one EEOC claim, filed another alleging retaliation, and then filed a lawsuit containing both discrimination and retaliation claims. The Tenth Circuit held that the fact the EEOC had not yet issued a right-to-sue letter on the retaliation claim did not preclude the district court from deciding the issue. In this case, as in *Smith*, Plaintiff included both discrimination and retaliation claims in his lawsuit. By doing so, he evidenced an intent not to separate the claims, but to join them in one proceeding. This Court will therefore address the retaliation claim. *See Mosley; Smith.*

As argued by Plaintiff, the sole reason for Defendant's ADA retaliation against Plaintiff was Plaintiff's filing of his first EEOC complaint in April 1997. Plaintiff has not attempted to argue that other, informal assertions of his rights under the ADA (such as requests for accommodation of his infirmities) led to retaliation. Therefore, the Court focuses on the time period from April 1997 forward. In other words, the Court will not consider alleged acts of retaliation such as denying Plaintiff the opportunity to apply for the meter reader/collector position, because that occurred prior to the EEOC filing.

At least some of the evidence discussed with respect to the workers' compensation retaliation claim is relevant to the ADA retaliation claim as well. For example, there is some reason to assume that if Defendant was hostile to Plaintiff's claim that he was disabled, and to his workers' compensation claim, Defendant would be even more hostile to the ADA discrimination claim. In addition, while Defendant did not have much time to retaliate against Plaintiff between the filing of his EEOC charge and his leave of absence, as soon as Plaintiff returned to work he was subjected to

the allegedly unfair and discriminatory work conditions and treatment. Because the ADA retaliation claim is so closely linked to the workers' compensation retaliation claim, the Court will deny the motion for summary judgment on this claim.

**3. First Amendment Retaliation:** In Plaintiff's portion of the pre-trial order he mentioned a possible claim arising out of the fact that he spoke to members of Defendant's board of directors about his employment situation and was punished for doing so. This claim was not raised in the complaint and will not be considered. Furthermore, speech concerning a personal job situation is not speech tied to a matter of public concern. Therefore, it is not protected by the First Amendment.

**D. Union As a Party**

Defendant seeks to have this Court overrule the decision of the Magistrate, who declined to add the union as a party to this action but said the union would be allowed to intervene if it wishes to do so. As the Magistrate pointed out, the authority on this question is split, with some courts holding the union is a necessary party and others holding to the contrary. *Compare U.S. Equal Employment Opportunity Com'n v. Rockwell Int'l Corp.*, 23 F.Supp.2d 892, 894 (N.D.Ill. 1998), *with Boczon v. Northwestern Elevator Co.*, 652 F.Supp. 1482 (E.D.Wis. 1987). The test for requiring joinder of a necessary party is whether complete relief can be afforded the parties already in the suit; whether the absent party has an interest related to the suit that would as a practical matter be impaired; and whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations if the absent party is not added. *Rishell v. Phillips Episcopal Memorial Med. Center*, 94 F.3d 1407, 1411 (10th Cir. 1996). Applying this standard, the Court holds the union is not a necessary party and need not be joined in this suit.

It is apparent that complete relief can be afforded, as between Plaintiff and Defendant, even if the union is not joined in the lawsuit. If Plaintiff succeeds in the suit, Defendant can be ordered to provide whatever relief is warranted, including reinstatement to a position with the cooperative, as may be justified by Plaintiff's seniority level. There is not a substantial likelihood that the union, having been given an opportunity to join in this lawsuit, would resist an order of this Court finding that unlawful retaliation had occurred, and that Plaintiff was entitled to reinstatement to his position.[4] This is especially so since the CBA contains an anti-discrimination clause. For this reason, there is not a substantial likelihood that Defendant will be subjected to inconsistent obligations to Plaintiff and the union. *Cf. Boczon* (if discrimination is found and reinstatement ordered, any claim by union of violation of CBA would be frivolous). Finally, and especially because the union has been given an opportunity to join in the case, there is not a likelihood that the union's interests will as a practical matter be impaired. The union has as much interest in seeing that Plaintiff, a former member, is treated justly, as does Plaintiff. Conversely, the union has no legitimate interest in maintaining a seniority structure that is the result of unlawful acts by Defendant. Based on the foregoing, the Court finds the union is not a necessary or indispensable party, and the Magistrate's order will be affirmed.

**E. Individual Liability**

Defendants Reyes and Cisneros have moved to dismiss the ADA and retaliation claims against them in their individual capacities, arguing there is no individual liability for such causes of action. As to the ADA discrimination and retaliation claims, they are clearly correct. Despite Plaintiff's

---

[4] By stating the possibility of such an order, the Court expresses no opinion as to whether reinstatement is a probable, or even possible, consequence of this lawsuit. As noted previously, there is a significant dispute as to whether the actions taken by Defendant rose to the level of a constructive discharge.

16

arguments to the contrary, and despite the fact that some district courts have agreed with Plaintiff, every circuit court addressing the issue has held there is no individual liability under the ADA. *See, e.g.*, *U.S. E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995). The Tenth Circuit has not addressed the issue under the ADA, but has determined there is no individual liability in Title VII cases. *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996) (relying on same analysis as the *AIC* opinion). The Court therefore holds there is no individual liability under the ADA.

The question of individual liability for workers' compensation retaliation claims is somewhat more complicated. Under *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 437, 872 P.2d 852, 855 (1994), a retaliation claim may be brought against a supervisor in his or her individual capacity only if the supervisor acted outside the scope of employment, or committed an intentional act solely for the supervisor's own benefit. The instances of retaliation discussed above, such as denying the opportunity to apply for a meter reader/collector position, wrongfully suspending Plaintiff several times, imposing restrictive and assigning discriminatory work rules, were all done by Defendants Reyes and Cisneros in the course and scope of their employment. That is, they performed these acts as supervisors employed by Defendant, and the acts are those performed by supervisors as a natural part of their duties. There is no evidence that either Reyes or Cisneros benefitted personally from these actions, or had any intention of benefitting personally. Furthermore, the Court notes that the statute upon which the workers'-compensation-retaliation cause of action is based, NMSA 52-1-28.2, refers only to retaliation by employers, not individuals. *See also Stinson v. Berry*, 123 N.M. 482, 487, 943 P.2d 129, 134 (Ct. App. 1997) (interpreting *Bourgeous* to mean that individuals are not liable in retaliation actions because the nature of the claim results from the employment relationship). To the extent Reyes or Cisneros acted out of malice, rather than good

17

supervisory judgment, the *Bourgeous* court indicated Plaintiff might have a claim for IIED. *Id.* However, as discussed above, Plaintiff's IIED claim is preempted by Section 301 of the LMRA. In any event, as to the retaliation claim, which is the only state-law claim surviving at this point, the Court holds there is no individual liability. Based on the foregoing discussion, Defendants Reyes and Cisneros will be dismissed from this lawsuit.

**Conclusion**

As discussed above, Plaintiff has introduced evidence showing that Defendant, through its management, unfairly disciplined him, imposed restrictive and discriminatory work conditions, and assigned him to duties that aggravated his knee injury. However, he failed to produce sufficient evidence showing he is disabled and thus entitled to the accommodation he requested. In addition, his state-law tort claims, except the retaliation claim, are subsumed in the CBA and therefore preempted by the LMRA. Finally, Plaintiff did introduce sufficient evidence to raise a genuine issue of fact as to whether Defendant retaliated against him for exercising his rights under the workers' compensation statute and the ADA. An Order giving effect to the holdings discussed above follows.

**O R D E R**

For the above stated reasons, the Court hereby GRANTS in part and DENIES in part the motion for summary judgment on all claims filed by Defendants (Doc. 52); GRANTS the motion to dismiss Reyes and Cisneros as individual Defendants (Doc. 48); GRANTS the motion to dismiss the prima facie tort claim (Doc. 45); and AFFIRMS the order of the Magistrate concerning joinder of the union as a party, thus rejecting Defendant's challenge (Doc. 43) to that order.

Dated at Albuquerque this 24th day of March, 1999.

_____
**BRUCE D. BLACK**
United States District Judge

Counsel for Plaintiffs:
Jeffery L. Thomason
P.O. Box 165
Eagle Nest, New Mexico 87718

Lee Deschamps
P.O. Box 909
Ranchos de Taos, New Mexico 87557

Counsel for Defendants
Nicholas J. Noeding
Anne Marie Turner
Noeding & Moody, P.C.
4300 San Mateo Blvd. NE, Suite B260
Albuquerque, New Mexico 87110